## The First National Bank of Chicago, Appellant, v. Aladdin Industries, Inc., Appellee.

### Gen. No. 38,175.

Opinion filed February 11, 1936.

BURRY, JOHNSTONE, PETERS & DIXON, of Chicago, for appellant; JOHN W. KEARNS and FRANK B. GILMER, both of Chicago, of counsel.

BENJAMIN LEVERING and ELMER H. HEITMANN, both of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff sued to recover $1,500 attorneys' fees alleged to be due under the terms of a trust indenture. Trial was had by jury, resulting in a verdict and judgment for defendant, from which this appeal is prosecuted. The principal question involved is whether the evidence offered by defendant was sufficient, when questioned by a motion for judgment notwithstanding the verdict, to establish a plea of accord and satisfaction interposed by defendant to avoid liability for the attorneys' fees claimed.

The essential facts disclose that in July, 1929, defendant, being in need of funds to carry on its business,

arranged to borrow $200,000 by the issuance of that amount of debentures under a trust indenture designating plaintiff as trustee and distributed by the First Trust & Savings Bank for a commission of $5,500. The debentures matured in five different series, all of which were paid at maturity except the last, for $50,000, which became due July 1, 1932. When they matured, defendant paid the interest due thereon but did not pay the principal.

In the latter part of June, 1932, Victor S. Johnson, president of defendant corporation, called on Mr. Grinnell of the First National Bank of Chicago with a check for the interest then due on the $50,000 debentures, and told him that defendant was not in position to pay the principal at that time but would do so as early as possible, probably not later than the ensuing fall. Grinnell accepted the check, and said: "Well, that is a lot better than most of them are doing. I don't think we are going to have any trouble." Several days later Mr. Porter of the plaintiff bank asked Johnson when defendant would be able to do something on the principal, and stated that the debenture holders would probably come in to see him (Porter), and requested Johnson to write a letter to show any debenture holder who might make inquiry. Johnson acquiesced, and defendant's treasurer wrote a letter to the First Union Trust & Savings Bank, dated July 5, 1932, stating in substance that defendant had ample funds with which it could liquidate the balance of the principal due but that on account of economic conditions, a large amount of its money was tied up in foreign subsidiaries which could not be released on account of the prohibitive rates of exchange, which would penalize defendant to the extent of upward of 35 per cent. The letter stated that in Australia alone defendant had upward of $60,000 due from its subsidiary in funds that were invested in government bonds and cash in the bank; that these funds

would be released as soon as the exchange became more favorable; that since the issuance of the debentures defendant had constructed an additional build-ing at Alexandria and made improvements to its plant, costing in excess of $100,000, which was taken out of working capital and for which no financing was provided.

In September of 1932 plaintiff's treasurer, Mr. Glantz, Messrs. Johnson and Porter met by arrangement. Porter told Johnson that he was being pestered by debenture holders and that something would have to be done, to which Johnson replied that if plaintiff would "go along" with defendant, it would be able to meet its obligation by October 15th or perhaps at least the forepart of November, and Johnson then urged Porter to give him the names of the people who were causing trouble. Porter suggested that Johnson see Grinnell of plaintiff bank. In compliance with the suggestion, Johnson and Glantz, together with Millar, defendant's secretary, went to see Grinnell September 13th and requested the names of the people who were bothering plaintiff. They volunteered to see these people and take up the twelve or fifteen thousand dollars worth of debentures held by those particular persons. Grinnell said he did not believe that could be done, but would consider the matter and let Millar know the following day and would do nothing before Friday, which would be September 16, 1932. The names of the debenture holders requested were never given to defendant, but plaintiff filed suit on Tuesday, September 13, 1932, the same day that it had promised defendant to do nothing until Friday.

Thereafter a declaration was filed by plaintiff, on September 23, 1932, including a claim for the bonds, $1,500 attorneys' fees and $600 trustee's fee, to which defendant demurred. Plaintiff amended its declaration, and defendant again demurred to the amended

pleading. That suit was never brought to trial, it having been dismissed by stipulation of the parties pursuant to settlement, which is the subject matter of this controversy.

October 31, 1932, Glantz and Millar of defendant company, with its counsel, Benjamin Levering, called on Grinnell at the bank and tendered $19.50 in cash, court costs, and $51,000 in payment of its obligations, except an item of $62.50 which defendant, as a part of the settlement, agreed to pay and did pay. The tender was made in consideration of the cancellation of the debentures. A conversation ensued between the parties, in which one of defendant's representatives said: "We do not owe any attorneys' fees, and we are not going to pay any attorneys' fees"; defendant also stated that plaintiff's suit was without force and effect, and abortive, and one of its representatives said to Grinnell, "Don't forget. You can take that or leave it. That is all you will ever get. If you take it you will take it in full settlement of everything that may be due." There is, of course, a dispute as to the conversation had at the time plaintiff accepted the tender, conditionally made, of $19.50 in cash and defendant's check for $51,000. The bill for cancellation, amounting to $62.50, was paid, and the suit then pending, claiming the amount due on the bonds, attorneys' fees and trustee's fees, was dismissed by stipulation of the parties.

Following this settlement, plaintiff instituted this proceeding, seeking to recover from defendant attorneys' fees claimed to be due under the terms of the trust indenture, which provided in substance that plaintiff should be entitled to advice of counsel and authorized reasonable compensation for that purpose. Defendant filed six pleas to the declaration, one being the general issue and five special pleas, the third of which was a plea of accord and satisfaction. The

gravamen of the controversy between the parties arises out of that plea. Plaintiff takes the position that this defense cannot succeed unless at the time defendant made the lesser payment, consisting of all items except attorneys' and trustee's fees, "a good faith dispute existed"; that no such dispute could exist in the present case, even as to attorneys' fees, which defendant had agreed to pay under the express terms of the trust indenture, unless the fees were unreasonable; and that since defendant had stipulated as to the reasonableness of the fees claimed the only possible basis for its alleged accord and satisfaction was eliminated from the case. In other words, they say that since the trust indenture provided for the payment of fees and no question was raised by defendant as to the reasonableness of the fees, the good faith dispute required by the authorities was absent and the plea of accord and satisfaction could not prevail.

Upon this question the court charged the jury as follows:

"The court instructs the jury that if you find from the evidence in this case that there was a dispute in good faith between the First Union Trust and Savings Bank, the plaintiff, and Aladdin Industries, Incorporated, the defendant, as to the amount justly due from the Aladdin Industries, Incorporated, to the First Union Trust and Savings Bank under their agreement and the defendant, the Aladdin Industries, Incorporated, through its agent, tendered to the First Union Trust and Savings Bank, a certain amount of money which money was offered with notice to First Union Trust and Savings Bank that the said money could only be accepted as a full and complete satisfaction of all of plaintiff's claim against the defendant under their contract which is in evidence in this case, and if you further find that the First Union Trust and Savings Bank fully understood that said amount was so

offered and conditioned on defendant's part and was accepted, with or without protest, and retained, you will find an accord and satisfaction occurred and the issues for the defendant. You should bring to the consideration of the evidence before you, your every day common sense and judgment as reasonable men, and those just and reasonable inferences and deductions which you, as men, would ordinarily draw from the facts and circumstances proved in this case, you should draw and act upon as jurors under the law as given to you in this charge. The court instructs the jury that a stipulation between the parties to a lawsuit that said suit be dismissed without costs means that the parties to said lawsuit agree that said suit may be dismissed without payment by either of said parties to the other of any statutory costs, such as court costs theretofore paid by either of said parties to the clerk of the court in which the suit was brought, and the word 'costs' when so used does not mean attorney's fees. The defense, which has been referred to as an accord and satisfaction, and the elements of which are elsewhere defined in these instructions, is an affirmative defense and must be proven by the defendant by the preponderance or greater weight of the evidence. The reasonableness of the amount of attorney's fees has been admitted by the defendant and is not an issue in this case so if you find from the evidence and the instructions that your verdict should be for the plaintiff you shall assess the plaintiff's damages at the sum of $1,500.''

Plaintiff contends that there was no issue of fact to submit to the jury because there was no valid dispute, but from an examination of the record we are impelled to differ with this conclusion. It must be conceded, of course, that section 1 of article 4 of the trust indenture provided that plaintiff should be entitled to advice of counsel in all matters concerning the trust and was

authorized in all cases to pay such reasonable compensation as it might deem proper to its attorneys. Nevertheless, plaintiff could forego the benefits of this provision if it chose to do so, and it was therefore a question of fact whether they did forego benefits thus stipulated in the written agreement when they accepted defendant's tender (October 31, 1932). When the tender was made on the latter date defendant took the position that it did not owe attorneys' fees, and its representative stated that they did not intend to pay such fees, and that plaintiff could "take that or leave it. That is all you will ever get. If you take it you take it in full settlement of everything that may be due." Whether or not this conversation took place was a question of fact for the jury, and if the jury believed that plaintiff accepted $51,000, plus the other items tendered, in the light of these statements, it was proper for them, under the instructions of the court, to conclude that plaintiff was then willing to forego any right to attorneys' fees authorized by the trust indenture.

Defendant takes the position that plaintiff violated its promise to delay bringing suit; and that if a delay until Friday, September 16, 1932, had been allowed, as promised, some satisfactory arrangement for payment might have been made in the interim which would have obviated the necessity for suit and the consequent charge for attorneys' fees, and they say these circumstances gave rise to the subsequent dispute as to whether or not plaintiff was entitled to fees. It is also urged that plaintiff, from the time of the maturity of the $50,000 debentures, on July 1, 1932, until the very day the suit was commenced, September 13, 1932, led the defendant to believe and to act as though no suit with its attendant costs would be commenced without notice, and that the commencement of the suit was

a manifestation of bad faith under the circumstances, and unnecessary, since the parties had not concluded their negotiations. In the suit which was dismissed by stipulation, pursuant to the settlement of the parties, plaintiff claimed not only the principal of the debentures and interest, but also the following items: $500—expenses for its officers; $1,500—attorneys' fees; $600—compensation of plaintiff for services as trustee. All of these items were disputed at the time of the settlement, and demurrers to plaintiff's amended declaration were then pending and undisposed of. By stipulating to dismiss the suit, defendant waived any defense that it might have to plaintiff's claim, not only for the principal and interest of the debentures but also for the various other items claimed.

Defendant's counsel does not take issue with the propositions of law advanced by plaintiff, namely, that in order to prevail under a plea of accord and satisfaction a good faith dispute must exist, but they say that there was a good faith dispute which was properly submitted to the jury under instructions that are not questioned. After careful consideration of the evidence, we think that the evidence offered by defendant was sufficient, when questioned by plaintiff's motion for judgment notwithstanding the verdict, to require the determination of a jury. In *Teague v. John E. Burns Lumber Co.,* 187 Ill. App. 225, one of the cases cited by plaintiff, suit was brought on an alleged indebtedness arising out of a sale of lumber by plaintiff's assignor to defendant. Plea of accord and satisfaction was interposed. The case was submitted to the jury, resulting in a verdict and judgment for plaintiff. Defendant, who appealed, asserted that the court should have given the jury a peremptory instruction. The Appellate Court affirmed the doctrine that where there is a bona fide dispute between a debtor and

creditor as to a portion of the claim made by the creditor, and the debtor sends to the creditor payment of the sum he admits to be due, with the express or implied condition that it is to be accepted as payment in full or returned, there is an accord and satisfaction if the creditor retains it, and that the creditor cannot thereafter recover the balance claimed to be due. In discussing the question, the court said (p. 228):

"The questions here, however, are narrower, and are only, in effect, *first,* the general one whether a jury may, as a part of their duty, properly decide whether in any particular case there is a *bona fide* dispute, under instructions of the court leaving that matter to them. . . . To the first of these questions our answer is affirmative. Although we do not find in the decisions in our own State any directly in point, we think, in reason, that the existence of *bona fides* in the dispute on the part of the debtor in such cases is a question of fact, and as such belongs to the jury to decide."

For the reasons stated herein, the judgment of the superior court should be affirmed, and it is so ordered.

*Affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.